| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-607 JGB (DTBx)** | Date | July 25, 2017 |
| Title | *Essex Insurance Company v. FD Event Co., LLC, et al.* | | |

Present: The Honorable  JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING Plaintiff Essex Insurance Company's Motion for Partial Summary Judgment (Dkt. No. 42) (IN CHAMBERS)

Before the Court is Plaintiff Essex Insurance Company's Motion for Partial Summary Judgment, (Dkt. No. 42), which the Court took under submission on June 19, 2017. (Dkt. No. 51.) After considering the papers filed in support of and in opposition to the motion, as well as oral arguments on June 19, 2017 and the supplemental briefs, the Court DENIES Plaintiff Essex Insurance Company's Motion for Partial Summary Judgment.

## I.  BACKGROUND

On April 4, 2016, Plaintiff Essex Insurance Company[1] ("Plaintiff") filed a complaint against Defendants FD Event Co., LLC ("FD Event")[2], 28th District Agricultural Association d/b/a San Bernardino County Fair[3] ("28th District"), San Bernardino County[4], Clifford John

---

[1] Plaintiff is a corporation organized under the laws of Delaware, with its principle place of business in Virginia. (SUF No. 1.) At all relevant times, Plaintiff was an approved eligible surplus line insurer. (Id.)

[2] The Clerk of this Court entered default against FD Event on August 9, 2016. (Dkt. No. 30.)

[3] 28th District is a California state agency, which operates the San Bernardino County Fair in Victorville, California. (SUF No. 3.)

[4] Plaintiff dismissed San Bernardino County without prejudice pursuant to Federal Rule of Civil Procedure 41(a) on June 23, 2016. (Dkt. No. 19.)

Gordon II ("Gordon"), Lyle Lee Bell ("LLB"), Dana Louise Bell ("DLB"), and Does 1 through 10. ("Complaint," Dkt. No. 1.) The Complaint asserts three claims: (1) declaratory relief regarding duty to defend; (2) declaratory relief regarding duty to indemnify; and (3) reimbursement. (Compl. ¶¶ 14-28.)

Plaintiff filed the present Motion for Partial Summary Judgment on May 8, 2017. ("Motion," Dkt. No. 42.) In support of the Motion, Plaintiff filed the following documents:

- Statement of Undisputed Facts and Conclusions of Law ("SUF," Dkt. No. 42-2);
- Declaration of Deborah Mason (Dkt. No. 42-3);
- Declaration of Phillip E. Smith (Dkt. No. 42-4);
- Application for Insurance (Dkt. No. 42-5);
- Essex Policy No. 3DS5440-M765460 (Dkt. No. 42-6);
- Complaint, Gordon v. FD Event Co. LLC, et al., No. CIVDS 1602089 (Dkt. No. 42-8);
- Reservation of Rights Letter to FD Event (Dkt. No. 42-9);
- Reservation of Rights Letter to 28th District (Dkt. No. 42-10);
- Motion for Summary Judgment by 28th District, Gordon v. FD Event Co. LLC, et al., San Bernardino County Superior Court Case No. CIVDS 1602089 (Dkt. No. 42-11, 42-12);
- Third Amended Complaint, 28th District Agricultural Association v. Maddux, et al., San Bernardino County Superior Court Case No. CIVDS 1606100 (Dkt. No. 42-13);
- Deposition Testimony of Will Maddux (Dkt. No. 42-14); and
- Request for Judicial Notice.[5] ("RJN," Dkt. No. 42-15.)

---

[5] Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). An adjudicative fact may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

In its RJN, Plaintiff requests the Court take judicial notice of six documents: (1) the Complaint; (2) Answer to Complaint by 28th District; (3) Answer to Complaint by the Gordon Claimants; (4) the Gordon Claimants' complaint in the Superior Court action; (5) 28th District's Motion for Summary Judgment in the Superior Court action; and (6) 28th District's Third Amended Complaint in the second Superior Court action. (RJN at 2.) The Court GRANTS Plaintiff's RJN as to the documents in the Superior Court actions because they constitute proceedings in another court, which have a direct relation to the matters at issue in this case. See U.S. ex rel. Robinson Rancheria Citizens Counsel v. Borneo, 971 F.2d 244, 248 (9th Cir. 1992). However, the Court DENIES Plaintiff's RJN as to the first through third documents, as they are pleadings in the instant case. As records on this Court's own docket in this matter, they are improper subjects of judicial notice.

Defendants DLB, LLB, and Gordon (collectively, the "Gordon Claimants") opposed the Motion on May 22, 2017. ("GC Opposition," Dkt. No. 45.) The Gordon Claimants[6] submitted the following documents as part of their Opposition:

- Statement of Genuine Issues in Opposition[7] ("GC DF," Dkt. No. 45-1);
- Policy (Dkt. No. 45-2);
- Relevant Portions of Transcript from Deposition of William Maddux (Dkt. No. 45);
- Objection to Evidence (Dkt. No. 45-3); and
- Declaration of Arash Homampour. (Dkt. No. 45-4.)

28th District also opposed the Motion on May 22, 2017. ("28D Opposition," Dkt. No. 46.) 28th District submitted the following documents in support of its Opposition:

- Declaration of Thomas Anderson (Dkt. No. 46-1);
- Declaration of Mark R. Israel (Dkt. No. 46-2);
- Insurance Specification (Dkt. No. 46-3);
- Certificate of Liability Insurance (Dkt. No. 46-3);
- Excerpts from Deposition of William Maddux (Dkt. No. 46-3); and
- Response to Separate Statement of Undisputed Material Facts. ("28D DF," Dkt. No. 47.)

Plaintiff filed a consolidated reply memorandum on May 30, 2017. ("Reply," Dkt. No. 48.)

The parties appeared before the Court for oral argument on June 19, 2017. Following oral argument, the Court took this matter under submission. (Dkt. No. 51.) On June 20, 2017, the Court ordered limited supplemental briefing. (See Dkt. No. 52.) 28th District filed their supplemental memorandum on June 22, 2016, ("28D Supplemental Memorandum," Dkt. No. 55), while the Gordon Claimants filed their supplemental memorandum on June 23, 2016.

---

[6] The Gordon Claimants are residents of California and are the heirs of Sabrina Gordon. (SUF No. 4.)

[7] The Gordon Claimants' Statement of Genuine Issues fails to conform to the formatting requirements set forth in this Court's Standing Order. ("Standing Order," Dkt. No. 10.) The Standing Order instructs the moving party to present its SUF in a three column, table format. (Standing Order ¶ 11(a).) The first column contains the number of the alleged undisputed fact, the second column contains a plain statement of the fact, and the third column contains a citation to the admissible supporting evidence. (Id.) The opposing party must then include a Statement of Genuine Disputes of Material Fact, which contains the moving party's three column table, as well as a fourth column. (Id.) The fourth column must identify if the fact is in dispute, explain the dispute, and cite evidence supporting the dispute. (Id.) Here, the Gordon Claimants' table is not in the required format. The Gordon Claimants are warned that further failure to conform to this Court's orders may result in sanctions.

("Gordon Claimants' Supplemental Memorandum," Dkt. No. 56.) Plaintiff responded on June 28, 2017. ("Plaintiff Supplemental Memorandum," Dkt. No. 57.)

## II. LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate its entitlement to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and presenting evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Id. at 325. Instead, the moving party's burden is met by pointing out an absence of evidence supporting the non-moving party's case. Id. The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252; see also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial, 14:144. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." Id. at 387 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

## III. DISCUSSION

### A. Undisputed Facts

The following facts are material and undisputed unless otherwise noted. They are "admitted to exist without controversy" for purposes of the instant motion. See Fed. R. Civ. P. 56(e)(2) (stating where a party fails to properly address another party's assertion of fact, the

court may "consider the fact undisputed for purposes of that motion"); L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); (Standing Order at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed for purposes of the motion.").)

FD Event is a limited liability company that owned and operated a non-mechanical amusement attraction known as FreeDrop USA (the "FreeDrop"). (SUF No. 2.) FD Event operated the FreeDrop at county fairs, festivals, and similar events throughout the nation. (SUF No. 5.)

The FreeDrop was a non-mechanical amusement attraction consisting of a tall scaffold structure, which was situated next to a large inflatable airbag. (SUF No. 6.) Participants would pay an admission fee to FD Event in order to be allowed to jump from the scaffold structure onto the inflatable airbag below. (SUF No. 7.)

On January 23, 2015, FD Event employee Aspen Decker telephoned retail insurance brokerage East Main Street Insurance Services and spoke with William Maddux about obtaining insurance.[8] (SUF No. 14.) During the telephone conversation, Maddux informed Decker that any policy FD Event obtained through East Main Street Insurance Services via The Event Helper Website would contain an "amusement ride" exclusion, and that the insurer would "not provide coverage for an amusement ride." (SUF No. 15.)

On April 29, 2015, FD Event applied for a liability insurance policy through Maddux's insurance brokerage. (SUF No. 16.) In the application for insurance, FD Event acknowledged the following: "I understand there is no coverage for amusement devices, inflatables, rides or animals . . . . This does not mean you cannot have them at your event, it means our policy will exclude coverage for amusement devices, inflatables, rides or animals. This policy will not cover any athletic or sports participants, employees, volunteers, or individuals compensated by the insured."[9] (SUF No. 17.)

---

[8] The Gordon Claimants object to the transcript of phone calls between Maddux and Decker on the ground that Plaintiff has failed to authenticate the document pursuant to Federal Rule of Evidence 901 ("Rule 901"). (Dkt. No. 45-3 ¶ 2.) Rule 901(a) requires that an item of evidence may be authenticated or identified by the production of "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Court OVERRULES the objection because the deposition testimony of Maddux sufficiently authenticates the transcript. During the deposition, Maddux authenticated the calls when he represented that it was The Event Helper's practice to record all phone calls. (Dkt. No. 42-14 at 12.) He also discussed some of the substance of those calls. (Id.)

[9] The Gordon Claimants object to the Application for Insurance on the ground that it is hearsay because the document has not been authenticated as a business record under Federal Rule of Evidence 803(6) ("Rule 803(6)"). (Dkt. No. 45-3 ¶ 3.) The Gordon Claimants also

Plaintiff subsequently issued policy 3DS5440- M765460 (the "Policy,") identifying FD Event as the named insured and 28th District as an additional insured for the period of May 23, 2015 through July 14, 2015.[10] (SUF No. 18.) The total cost of the Policy—including premium, taxes, and fees—was $104.20. (SUF No 24.)

The Policy provides insureds with Commercial General Liability coverage with limits of $1,000,000 each occurrence, subject to certain terms, conditions, and exclusions. (SUF No. 19.) The Policy's insuring agreement provides in part as follows:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply.

(SUF No. 20.) The FreeDrop is not scheduled on the declarations page of the Policy. (SUF No. 22.)

---

object to paragraph 3 of the declaration of Deborah Mason, which states FD Event submitted the Application for Insurance on April 29, 2015 and indicates that application is attached as Exhibit 1 in support of Plaintiff's Motion. (Id. ¶ 2.) The Gordon Claimants assert Mason lacks personal knowledge and her statement is hearsay. The Court disagrees.

The Court OVERRULES the objection to the statement in Mason's declaration because, as the claim representative responsible for the coverage investigation for Plaintiff, she has personal knowledge of the matters at issue here, as well as the records Plaintiff keeps. (See Mason Decl. ¶ 2.) The Court also OVERRULES the objection as to the document which Plaintiff purports to be the Application for Insurance because Mason properly authenticates the document as a record of Plaintiff's business. Specifically, Mason states the following: (1) she has personal knowledge of the matters stated in her declaration due to her position as the claim representative responsible for the coverage investigation; (2) access to Plaintiff's version of the Policy; and (3) a true and correct copy of the policy is attached.

[10] The Gordon Claimants object to paragraph 4 of the declaration of Deborah Mason, which indicates that after FD Event submitted its Application for Insurance, Plaintiff issued the Policy. (Dkt. No. 45-3 ¶ 4.) The Gordon Claimants assert that Mason's statements are inadmissible because she lacks personal knowledge and they constitute hearsay because the Policy has not been authenticated as a business record under FRE 803(6). (Id.) The Court OVERRULES these objections for the same reasons described in note 6.

28th District allowed FD Event to operate the FreeDrop at the San Bernardino County Fair in May 2015. (SUF No. 8.) On May 28, 2015, Sabrina Gordon attended the San Bernardino County Fair. (SUF No. 9.) Sabrina Gordon paid an admission fee to FD Event to use the FreeDrop. (SUF No. 10.) While Sabrina Gordon was on the scaffold structure, she fell, missed the inflatable airbag on the ground below, and suffered fatal injuries. (SUF No. 11.)

In February 2016, the Gordon Claimants filed a lawsuit against FD Event, 28th District, and others in the Superior Court for the County of San Bernardino: Gordon v. FD Event Co., LLC, et al., No. CIVDS 1602089 (the "underlying action"). (SUF No. 12.) In the underlying action, the Gordon Claimants allege that FD Event and 28th District negligently designed, constructed, owned, operated, managed, inspected, and/or supervised the FreeDrop, and that such negligence was a proximate cause of Sabrina Gordon's death. (SUF No. 13.) After the Gordon Claimants filed the underlying action, Plaintiff agreed to defend FD Event and 28th District in the underlying action, subject to a reservation of rights. (SUF No. 25.)

**B. Summary of Argument**

Plaintiff moves for partial summary judgment as to its two claims for declaratory relief. (Mot. at 1.) Specifically, Plaintiff seeks a judicial determination that it has no duty to defend or indemnify FD Event as the named insured, or 28th District as an additional insured, in the underlying wrongful death action by the Gordon Claimants. (Id.)

Plaintiff argues it is entitled to partial summary judgment against 28th District and the Gordon Claimants on both claims because the Policy contained an "Amusement Liability Endorsement" and a "Special Events and Spectator Liability Exclusions Endorsement," each of which "clearly and unambiguously" bars coverage for any liability that FD Event or 28th District may have to the Gordon Claimants in the underlying action. (Id.) Since neither FD Event or the 28th District are entitled to coverage, Plaintiff contends it is entitled to a judicial declaration that is has no duty to defend or indemnify 28th District in the underlying action. (Id. at 1-2.)

Conversely, the Gordon Claimants and 28th District argue Plaintiff is not entitled to partial summary judgment on its claims for declaratory relief on two grounds. First, the Gordon Claimants and 28th District claim the policy actually made available to FD Event through The Event Helper website following its online purchase did not include the "Amusement Liability Endorsement," which prevents Plaintiff from disclaiming coverage for the death of Sabrina Gordon. (GC Opp'n at 1; 28D Opp'n at 2.) Second, the Gordon Claimants and 28th District argue the "Special Events and Spectator Liability Exclusions Endorsement" cannot bar coverage because, pursuant to principles of insurance policy interpretation, it does not apply. (GC Opp'n at 1; 28D Opp'n at 12-13.) The Gordon Claimants further contend that even if the Special Events and Spectator Liability Exclusions Endorsement was applicable, its application would be unconscionable. (GC Opp'n at 1.)

In response, Plaintiff makes three arguments. Plaintiff first argues that even if the Amusement Liability Endorsement was not made available to FD Event, that error was one

committed by the retail insurance broker East Main Street Insurance Services, Inc., not Plaintiff. (Reply at 1-2.) Because East Main Street Insurance Services is a retail insurance broker, it is not a legal agent of Plaintiff, and thus its error cannot be imputed to Plaintiff for purposes of defining the scope of coverage under the Policy. (Id.) Next, Plaintiff contends the Special Events and Spectator Exclusions Endorsement independently bars coverage because each clause within the exclusions endorsement is separate and independent from each other, and when interpreted, both Clause (c) and Clause (e) bar coverage. (Id. at 4-8.) Plaintiff argues further that application of the Special Events and Spectator Exclusions Endorsement is not unconscionable because FD Event had ample notice of the coverage limitations. (Id. at 9.) Finally, Plaintiff notes there is no legal basis by which the 28th District can obtain greater rights under the Certificate of Insurance than are available under the Policy. (Id. at 10-12.)

**C. Analysis**

  1. **Amusement Liability Endorsement**

Plaintiff first contends it is undisputed that the policy it issued to FD Event as the named insured and 28th District as an additional insured, contained an Amusement Liability Endorsement that bars coverage for any liability FD Event and 28th District may incur in the underlying action by the Gordon Claimants. (Mot. at 11-14.) The Amusement Liability Endorsement states in relevant part:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> **AMUSEMENT LIABILITY ENDORSEMENT**
>
> This insurance does not apply to 'bodily injury' . . . or any injury, loss or damage, arising out of:
>
> …
>
> 2. The operation, maintenance, use, or existence of any ride, machinery, equipment, stand, show, game devices, exhibition or coin-operated device not scheduled on the declarations page of this policy.
>
> …
>
> Non-compliance with the above will void coverage.

(Dkt. No. 42-7 at 23.)

Plaintiff maintains it issued the Policy—Policy No. 3DS5440-M765460—which identified FD Event as the named insured and 28th District as an additional insured after FD Event submitted its Application for Insurance. (Mason Decl. ¶ 4.) The Policy included the Amusement Liability Endorsement, (Dkt. No. 42-7 at 23), and had effective dates of May 23,

2015 through July 14, 2015, and was in force on May 28, 2015—the date of Sabrina Gordon's death. (Mason Decl. ¶ 4.) Plaintiff attaches a "true and correct" copy of the Policy to its Motion. (See Dkt. No. 42-6, 42-7.)

However, the Gordon Claimants and 28th District submit evidence that contradicts Plaintiff's contention. The Gordon Claimants submit a "true and correct copy" of the policy purchased and made available to FD Event through the Event Helper website. (Dkt. No. 45-2 at 4-86.) This policy was obtained in response to a subpoena by the Gordon Claimants against East Main Street Insurance Services. (Homampour Decl. ¶ 2.) According to the deposition testimony of William Maddux, President of the Event Helper, Inc. and East Main Street Insurance Services, the policy documents produced by the Event Helper, Inc. in response to the subpoena constitute the policy from Plaintiff, which East Main Street Insurance Services had in its files; there is no other policy from Plaintiff which was not produced. (Dkt. No. 45-2 at 113.) The policy submitted by the Gordon Claimants does not include an Amusement Liability Endorsement.

Relying on the deposition testimony of William Maddux, President of The Event Helper, Inc. and East Main Street Insurance Services, the Gordon Claimants explain that The Event Helper is the holder of a master policy from Citadel and placed with Plaintiff. (GC AF No. 30.) The Event Helper website enables individuals and entities to apply and purchase a policy as an additional insured under the master policy. (GC AF No. 31.) The additional insured may then download their policy directly from The Event Helper website. (GC AF No. 33.) The Gordon Claimants assert FD Event purchased the policy at issue through The Event Helper website—a copy of which East Main Street Insurance Services obtained from Citadel and then produced in response to the subpoena. (GC AF No. 35-38.) That policy was included as Exhibit 5 to the deposition of Maddux, (GC AF No. 38), and provided to the Court in support of its Opposition to the Motion. (See Dkt. No. 45-2 at 4-86.)

28th District submits the same policy as that submitted by the Gordon Claimants in support of its Opposition to the Motion. (28D AF No. 17-19; Israel Decl. ¶ 3; Dkt. No. 46-3.) Like the Gordon Claimants, 28th District also relies on the deposition testimony of Maddux to set forth the process by which FD Event obtained insurance. (28D AF No. 10-16.) Additionally, 28th District provides a chain of emails from The Event Helper, Inc. employees, in which they discuss the FD Event policy. (Dkt. No. 46-3 at 103-104.) Director of Operations Sharla Cartzdafner states: "To my knowledge, there was no amusement liability endorsement on any of FD Event's policies. We don't offer it." (Id. at 103.)

At the June 19, 2017 hearing, Plaintiff conceded—at least for purposes of this Motion—that the policy made available to FD Event via The Event Helper website did not include the Amusement Liability Endorsement. Despite this fact, Plaintiff maintains that the policy issued to FD Event is the policy reflected in their underwriting records. (Reply at 1; Pl. Supp. Mem. at 2.) Whether or not FD Event received the policy actually issued by Plaintiff is attributable to the action or inaction of East Main Street Insurance Services. (Reply at 1-4; Pl. Supp. Mem. at 2-3.) Because East Main Street Insurance Services is a retail insurance broker, its actions with respect

to the provision of the policy to FD Event, are as a matter of law, not imputable to Plaintiff. (Reply at 1-4; Pl. Supp. Mem. at 2-3.) As a result, Plaintiff cannot be bound by the terms of the policy FD Event received via The Event Helper website; rather, Plaintiff may only be held to the terms of the policy it issued i.e., the certified policy from its underwriting records. (Reply at 1-4; Pl. Supp. Mem. at 2-3.)

To support its position, Plaintiff relies on the California Insurance Code. First, Plaintiff cites § 1761, which prohibits a retail insurance broker such as East Main Street Insurance Services from transacting insurance with a nonadmitted insurer like Plaintiff without using a surplus line broker. Cal. Ins. Code § 1761(a) ("A person within this state shall not transact any insurance for a home state insured with nonadmitted insurers, except by and through a surplus line broker . . . ."). Second, Plaintiff cites § 703, which makes it a misdemeanor to "[a]ct[] as agent for a nonadmitted insurer in the transaction of insurance business in this state for a home state insured . . . ." Id. § 703(a). From these statutory provisions, Plaintiff concludes California law is very clear: "[B]ecause a retail broker is legally prohibited from acting as the 'agent' of a surplus line insurer, as a matter of law the acts or omissions of the retail broker are not imputable to the surplus line insurer." (Reply at 3.)

Although Plaintiff contends the issue before the Court is a straightforward question of law, that is simply not the case. Plaintiff asks the Court to find that East Main Street Insurance Services failed to make the Amusement Liability Endorsement available to FD Event through the Event Helper Website at the time of purchase, and that such conduct is not imputable to Plaintiff because East Main Street Insurance Services was not, and could not legally be, Plaintiff's agent. However, to find as Plaintiff requests, the Court must first conclude the policy submitted by Plaintiff is the policy actually issued to FD Event. As the Court indicated at the July 19, 2017 hearing, the underdeveloped record does not support such a factual determination. While Plaintiff presents evidence of a policy from its underwriting records that includes the Amusement Liability Endorsement, it fails to present evidence that establishes its policy was the one actually issued to FD Event. Plaintiff also provides no evidence or details regarding the transaction—for instance, information regarding its dealings with Citadel, the licensed surplus line broker for the transaction with East Main Street Insurance Services and FD Event. Additionally, the parties reference an agreement, which based on the deposition testimony of Maddux, establishes the parameters of the automated, online transactions conducted via The Event Helper Website. However, this agreement is not in the record before the Court.

Ultimately, the mere existence of a version of a policy that includes the Amusement Liability Endorsement is insufficient to support judgment as a matter of law in light of the fact that the Gordon Claimants and 28th District present evidence that a policy without the endorsement also exists. Absent additional evidence the Court cannot conclude the policy made available to FD event via The Event Helper Website was an incorrect version, made available only by mistake by East Main Street Insurance Services. As a result, the Court finds there are material issues of fact regarding what actually constitutes the FD Event policy and whether the Amusement Liability Endorsement was included, that require resolution by a jury. The Court

thus DENIES summary judgment as to Plaintiff's two claims for declaratory relief on this ground.

2.  **Special Events and Spectator Liability Exclusions Endorsement**

Plaintiff alternatively contends the Special Events and Spectator Liability Exclusions Endorsement bars coverage for any liability FD Event and 28th District may incur in the underlying action by the Gordon Claimants. (Mot. at 14-18.) As an initial matter, the Court notes that there is no dispute the Policy submitted by Plaintiff, as well as the policy provided by the Gordon Claimants and 28th District, includes the Special Events and Spectator Liability Exclusions Endorsement. (Mot. at 14-18; GC Opp'n at 1, 4-10; 28D Opp'n at 12-13.) Thus, the sole issue is whether the Special Events and Spectator Liability Exclusions Endorsement bars coverage in this instance.

"[I]nterpretation of an insurance policy is a question of law." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 18 (1995). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264 (1992).

Under California law, "[t]he fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." Powerline Oil Co., Inc. v. Superior Court, 37 Cal. 4th 377, 390 (2005) (citation omitted); Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.") "Such intent is to be inferred, if possible, solely from the written provisions of the contract." Id. (citation omitted). "If contractual language is clear and explicit, it governs." Id. (citation omitted); Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone . . . .").

In interpreting a policy provision, a court must determine the "clear and explicit" meaning of the provisions, "interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given them to by usage' . . . ." AIU Ins., 51 Cal. 3d at 822 (citing Cal. Civ. Code §§ 1638, 1644.) A court "must also interpret these terms 'in context' and give effect 'to every part' of the policy 'with each clause helping to interpret the other.'" Palmer v. Truck Ins. Exchange, 21 Cal. 4th 1109, 1115 (1999) (quoting Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1265 (1992)). If the meaning of the policy provision is ambiguous, such ambiguities are generally construed against the insurer in order to protect the insured's reasonable expectation of coverage. Palmer, 21 Cal. 4th at 1115. "A policy provision is ambiguous only if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole." Id.

The Court begins its analysis with the language of the provision at issue. The Special Events and Spectator Liability Exclusions Endorsement in relevant part states:

> This insurance does not apply to 'bodily injury' . . .
>
> (c) Arising out of participating, in any capacity, in a demonstration, exhibition, contest, competition, show, race, performance, game or other special event. This exclusion applies to any person and includes, but is not limited to: participants, musicians, entertainers, mechanics, drivers, stewards, officials, attendants, independent contractors, 'volunteer workers', 'employees', or to any person employed on or about the premises;
> …
> (e) Sustained by any authorized or unauthorized person while in an activity area, such as, but not limited to: an arena, chute, corral, pit area, race track, set up area, show area, stage, staging area, or similar place of activity . . . .

(Dkt. No. 42-7 at 34.)

Plaintiff contends the Special Events and Spectator Liability Exclusions Endorsement bars coverage in two independent situations as set forth in Part II Clause (c) and Part II Clause (e). (Mot. at 14-18.) As to Clause (c), Plaintiff states that the exclusion provides "no coverage for bodily injury 'arising out of' participating in an 'exhibition,' 'show,' 'performance' or 'other special event.'" (Id. at 16 (emphasis omitted).) Plaintiff contends the following words have the following meaning according to Webster's Dictionary: (1) "exhibition" means "an act or instance of showing, evincing, or showing off" or "a public show or showing: as . . . a public display of athletic or other skill often in the form of a contest or other game but usu. without importance with respect to winning or losing"; (2) "show" means "a circus or carnival or any of its sideshows . . . ."; and (3) "performance" means "a public presentation or exhibition . . . ." (Id. at 17.) Plaintiff contends further that the phrase "other special event" is a "catch-all" phrase that encompasses any other event that is similar to an exhibition, show, or performance. (Id.) Relying on these definitions, Plaintiff contends "[t]he act of jumping from a scaffold onto an inflatable airbag in plain view of other attendees at a county fair plainly qualifies" as participation in an exhibition, show, performance, or other special event. (Id.)

With respect to Clause (e), Plaintiff states the exclusion bars coverage for "bodily injury '[s]ustained by any authorized or unauthorized person, while in an activity area, such as, but not limited to: an arena, chute, corral, pit area, race track, set up area, show area, stage, staging area, or similar place of activity." (Mot. at 15 (emphasis omitted).) Plaintiff argues that because the FreeDrop consists of a metal scaffold structure next to an inflatable airbag, which participants ascend in order to jump, the scaffold structure constitutes an "activity area" under Clause (e). (Id. at 15-16.)

In contrast, the Gordon Claimants assert that Clauses (c) and (e) should be interpreted within the context of the entire exclusions endorsement. (GC Opp'n at 6.) The Gordon Claimants argue the title of the exclusions endorsement "suggest[s] that there is an exclusion for types of events that are meant to have an audience, and for the persons who watch the events." (GC Opp'n at 6.) The Gordon Claimants contend this interpretation is confirmed by the text of the clauses themselves. (Id.) Specifically, Clause (c) lists types of events, the purposes of which

are to either educate or entertain an audience, and the type of person who would participate in the events, while Clause (e) indicates where the events may be located or found. (Id. at 6-7.)

28th District on the other hand argues the FreeDrop attraction does not fit within the categories described by Clause (c), i.e. "demonstration, exhibition, contest, competition, show, race, performance, game or other special event." (28D Opp'n at 13.) 28th District argues further that Clause (e) does not indicate that the exclusions endorsement applies to a person participating in a carnival ride or attraction in "clear and explicit" language, and that the proper interpretation of Clause (e) is determined by the title of the exclusions endorsement. (Id.)

Examining Clause (c) and Clause (e) in the context of the entire Special Events and Spectator Liability Exclusions Endorsement, the Court concludes neither clause bars coverage in this instance. First, Clause (c) is not reasonably susceptible to the interpretation proposed by Plaintiff because Plaintiff seeks to convert the FreeDrop from a fair attraction into a covered event based on the fact that utilization of the FreeDrop occurs in plain view of other fair attendees. As the Gordon Claimants note, Sabrina Gordon engaged in an individual activity, the purpose of which was to experience a free fall from a chosen height. (See GC Opp'n at 7.) While other fair attendees could witness individuals utilize the FreeDrop, the purpose of the FreeDrop was not specifically for spectators; rather it was to profit from individuals seeking to have a free fall experience.

Plaintiff relies on two cases in support of its proposed interpretation of Clause (c); however, neither are persuasive. In Essex Ins. Co. v. Insider Prod., LLC, No. 2:15-cv- 09762-SVW-RAO, 2016 WL 7655691 (C.D. Cal. June 29, 2016), the plaintiff was injured when she fell into the orchestra pit at the conclusion of a beauty pageant that she participated in as a contestant. 2016 WL 7655691, at *1. The insurance policy contained an exclusion endorsement identical to the one at issue here and barred coverage for any bodily injury arising out of participation in a contest, competition, show, or other special event. Id. at *3-4. Relying on the endorsement exclusion, the district court concluded the policy "unambiguously exclude[d] coverage" of the plaintiff's claim. Id.

Insider Prod. is clearly distinguishable. Unlike here, the beauty pageant is the kind of event contemplated and clearly referred to in the exclusions endorsement—a contest or competition. Also unlike here, the plaintiff was clearly a participant in such an event, as she was a contestant competing in the beauty pageant.

Plaintiff next cites Daggs v. Foremost Ins. Co., 148 Cal. App. 3d 726 (1983). In Daggs, the plaintiff was a competitor in a motocross motorcycle race at a motorcycle racing park. 148 Cal. App. 3d at 728. During the race he was injured when he collided with a chain link barrier fence surrounding the motorcycle course. Id. The insurance policy included an endorsement which excluded coverage for bodily liability injury for "any person injured while practicing for or participating in any race, contest or exhibition." Id. at 729. The court held that the "plaintiff was injured while operating his motorcycle in an organized racing event at the insured's facilities.

This being the case, the policy unambiguously excludes coverage of [the] plaintiff's accident." Id.

Like <u>Insider Prod.</u>, <u>Daggs</u> is also distinguishable. In contrast to Sabrina Gordon's utilization of the FreeDrop, the plaintiff in <u>Daggs</u> clearly participated in an organized race of motorcycles and was injured doing so. Such a situation was expressly provided for in the exclusion, and thus unambiguously excluded coverage. In contrast, Sabrina Gordon's fatal injuries arose from her utilization of a fair attraction that was not expressly provided for or clearly contemplated as a demonstration, exhibition, show, or performance. Moreover, Sabrina Gordon's utilization of the FreeDrop does not easily fall into the "catch-all" category.

The Court reaches the same conclusion with regard to Clause (e). Standing alone, Clause (e) is broad. It would bar coverage for any bodily injury occurring in "an activity area" which is defined by a non-exhaustive list of examples. However, as the Gordon Claimants and 28th District note, Clause (e) cannot stand alone—it must be interpreted within the context of the entire endorsements exclusion. Here, context includes the title and other clauses—all of which suggest the endorsements exclusion contemplates only events, as well as the participants and spectators of such events. In light of that context, the Court concludes an "activity area," as defined in Clause (e) refers to activity areas associated with events, and encompasses the locations where participants and spectators would be subject to risk of bodily injury while at such events. The Gordon Claimants' proposed interpretation is instructive: "horseraces in a chute, corral staging area or race track; car races in a pit area or race track; theatrical performances or exhibitions of goods in a set up area, stage, or show area." (GC Opp'n at 7.)

In sum, the Court finds coverage is not barred by either Clause (c) or Clause (e) of the Special Events and Spectator Exclusions Endorsement. Plaintiff's proposed interpretations are unreasonable in light of the greater context of the exclusions endorsement, as well as the language of the provision itself. Because the exclusions endorsement does not bar coverage in this instance, the Court DENIES partial summary judgment on this ground as to Plaintiff's two claims for declaratory relief.

## IV. CONCLUSION

For the foregoing reasons, the Motion is DENIED. The parties shall continue to trial in this matter.

**IT IS SO ORDERED.**